## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| NICOLE HUNTER, on behalf of her minor child S.M., individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>   v.<br><br>SECURLY, INC.,<br><br>           Defendant. | Court File No.: 0:24-cv-2159<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Nicole Hunter, on behalf of her minor child S.M., ("Plaintiff"), brings this action

individually and on behalf of all others similarly situated against Defendant Securly, Inc.

("Securly" or "Defendant"). Plaintiff makes the following allegations based upon

information and belief, except as to the allegations specifically pertaining to herself and

S.M., which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit against Defendant for damages and

injunctive relief for violations of the Minnesota Government Data Practices Act

("MGDPA"), Minn. Stat. § 13, *et seq.*

2.      Securly dubs itself "The Student Safety Company" and provides "technology solutions developed specifically for K-12 schools."[1]  Securly markets its "comprehensive product platform" (the "Securly Platform") to educators as being able to help them "keep students safe online and at school," "know how students are really doing and intervene when needed," "help students stay focused and engaged in learning," and "support technology initiatives and decision making."[2]

3.      The Securly Platform consists of assorted products that address various student safety, wellness, and engagement needs.  One such product, ***aware***, provides comprehensive scanning of students' online activities by monitoring Google Drive files, Docs, Sheets, Slides, OneDrive files, Canvas (messages, comments, and uploaded images), emails, social media, and scanning web searches to identify indications of suicide, depression, violence, bullying, and nudity.[3]  Concerning student activities are flagged and sent as real-time alerts to designated staff via email.[4]

4.      The Securly Platform also offers ***home***, a product that offers schools the ability to customize parents' control over their child's school device when it goes home.[5] Through Securly's Home mobile app, parents can customize web filtering rules when

---

[1] Securly, *Securly Platform Overview*, available at https://www.securly.com/site/assets/pdf/securly-platform-overview.pdf (last accessed Feb. 26, 2024).

[2] *Id.*

[3] Securly, *Aware Product Brief*, available at https://www.securly.com/site/assets/product-briefs/aware.pdf (last accessed Feb. 26, 2024).

[4] *Id.*

[5] Securly, Home-Admin Webpage, available at https://www.securly.com/home-admin (last accessed Feb. 26, 2024).

school devices go home, pause internet access when the device is away from school, schedule offline time for the device, and opt-in to receive flagged activity notifications for their child.[6]  Securly Home additionally sends parents a snapshot of their child's online activity every week, directly to their inbox.[7]

5.      Defendant, through the Securly Platform background software (the "Software"), knowingly and willfully surveilled student activity on students' school-issued devices and collected educational data and students' geolocation data without proper consent.  With the data gathered by the Software, Defendant attempts to, and does, coax parents to open accounts to access Securly products storing their own children's data.

6.      In conjunction with the Saint Paul Public Schools district, Defendant operated its surveillance software without notifying parents or students that it was surveilling students both at school and at home, regardless of the nature of the activity occurring on students' school-issued devices.

7.      In fact, although Securly positions itself as a "[a] market leader in K-12 safety and wellness,"[8] Commonsense.org, a nonprofit organization dedicated to furthering online student safety, gave Securly a 64 out of a possible 100 rating on "[f]ollowing student data privacy laws."[9]

---

[6] *Id.*

[7] *Id.*

[8] Securly, *Solutions to Support the Whole Student*, available at https://www.securly.com/ (last accessed Jan. 16, 2024).

[9] CommonSense Privacy Program, *Privacy Evaluation for Securly,* (June 7, 2021) available at https://privacy.commonsense.org/evaluation/securly (last accessed Jan. 16, 2024).

8.      Accordingly, Defendant's actions violated the privacy rights of students and are likely to continue to injure students in the form of repeated and continuous violations of those students' privacy rights.

## PARTIES

9.      Plaintiff Nicole Hunter is the mother of S.M., a minor student who has been at all relevant times, and currently is, enrolled in Saint Paul Public Schools ("SPPS"). S.M. was given a school-issued device from SPPS for school and personal use at home and on campus.  At all relevant times, S.M. used her school-issued device, an Apple iPad, for personal searches, accessing various social media, and for educational searches.  Both Plaintiff Hunter and S.M. were unaware that Securly software was surveilling S.M.'s activities until Plaintiff Hunter received an automated email summarizing S.M.'s device activities, with an offer to view more if she signed up for a Securly account.  This email was delivered to Plaintiff *after* Defendant had already been engaged in surveillance of S.M.

10.      Defendant Securly, Inc. is a Delaware corporation with its principal place of business in Charlotte, North Carolina.  Defendant owns, operates, and sells software designed to surveil K-12 student activity, including schoolwork and personal media consumption.

## Jurisdiction And Venue

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate

amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class members is a citizen of a state different from Defendant.

12.     This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself to the benefits of conducting business within Minnesota.  As such, a substantial portion of the events giving rise to this action occurred in this state.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims took place within this District.

## Factual allegations

### A.     Plaintiff Hunter's Experience.

14.     Plaintiff Hunter is the mother of S.M., a minor child.

15.     S.M. attends a middle school in the Saint Paul Public Schools district.

16.     S.M. was issued an Apple iPad device by her school for use in part for the school's  distance learning program.

17.     Unbeknownst to both S.M. and Plaintiff Hunter, the school district had installed Defendant's Securly software on the school-issued device which, among other things, tracked S.M.'s geolocation, keystrokes and web searches, websites visited, and videos watched.

18.     Plaintiff Hunter was never provided with any disclosure, before surveillance began, that her minor child's location, personal communications, and searches were being tracked and intercepted by Defendant, or that S.M.'s video-viewing habits would be shared with third parties.

19.     Plaintiff Hunter was shocked and alarmed when she learned that Defendant had intercepted and disclosed this information to third parties without her or her child's knowledge or written or verbal consent.  Plaintiff had not known, was not provided with prior notice, and was not given an opportunity to consent or decline this surveillance by Securly on behalf of her minor child until Plaintiff received her child's activity report.

20.     In fact, students and parents were not made aware of Securly's presence on their devices until a September 16, 2022, email from Securly notified students' parents. Not only were students never notified prior to that date, but, as a subsequent email from SPPS—sent a week after Securly's September 16, 2022, email indicated—although "[m]any district parents received an email from Securly … it was not supposed to go live [as] [t]he district was preparing to communicate with families first."  Evidently, the *first* notification that Securly software was surveilling S.M. and all Saint Paul Public School students' school-issued device activity was sent in error.

21.     Worse, SPPS then waited until September 26, 2022, to acknowledge to parents that "SPPS has used Securely ***for a few years*** as [the District's] content filtering tool that helps the district keep students safe on the internet when using their iPads at school and at home."

B.      **Securly's Surveillance Software.**

19.     Securly develops, maintains, and sells "[c]loud-[b]ased [w]eb [f]iltering" software that, among other offerings "empowers safeguarding" to "give teachers and parents visibility and control of online activity" by using both a "human safeguarding

team" and "artificial intelligence … which monitor[s] student social media, email and documents[.]"[10]

20.     Specifically, Securly software, in real time, relies on advanced artificial intelligence "to monitor emails, documents and social media messages to look for clues into a student's well-being."[11]  It does so by analyzing the content and context of a message, "rather than just keywords" and relies on "enhance[d] PageScan and ScreenScan[s]" of the student's activity.[12]

21.     In turn, Securly's software "provides visibility into online activity via emailed or downloaded reports and sends notifications for flagged content … whether students are working at school or at home"[13] to parents and school administrators.  This service, Securly explains, "ensure[s] that ***no student activity goes unchecked***."[14]

22.     In fact, Defendant describes its "filter" product partly as follows:

> Filter, a cloud-based web filter designed specifically for schools, helps you keep students safe with powerful features that make your school safer and your IT team happier.  ***Get visibility into online activity, download or email reports, and block inappropriate sites instantly***. [15]

---

[10] iTS, *Securly*, available at https://www.its-group.com/en/products/detail/securly (last accessed Jan. 5, 2024) (emphasis added).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* (emphasis added).

[15] Securly, *Deliver Safe Online Experiences*, available at https://www.securly.com/filter (last accessed Jan. 5, 2024) (emphasis added).

23.     In addition to monitoring student activity, Defendant is also a location tracker, collecting location data from elementary, middle, and secondary school students via their school-issued devices, in violation of Minnesota state law.

24.     For example, Securly's privacy policy explains that when "the Services are used in a personal computing device owned by schools, [Securly] may use geolocation information to determine the location of the device. … [Securly] may also use elements of usage and analytics information (such as IP address) to determine generalized location."[16]  And, as shown in a Securly contract with an Illinois school district, Securly advises that it does, in fact, collect geolocation information.

25.     Under the guise of student safety, Defendant vortexes significant amounts of private, student educational data, including online sites visited, videos watched, and search terms entered by students:

*(continued on next page)*

---

[16] Securly, *Student Privacy Policy*, available https://www.securly.com/students-privacy (last accessed Jan. 16, 2024).



*Figure 1.*

26.    As such, Securly essentially spies on students without their knowledge or consent: "Know your students' online activity with a visual audit trail including records of sites visited, exact searches, and video thumbnails."[17]  In fact, both teachers and administrators have access to Securly-scraped educational data at their leisure.

*(continued on next page)*

---

[17] Securly, *Simplify Your Workflow*, available at https://www.securly.com/filter (last accessed Jan. 5, 2024).



Teachers can check the browsing history of their students that occurred during class, while administrators can view all the history of all students.

*Figure 2*

26.     On its website, Defendant explains that its surveillance of student activity operates "regardless of location or device."[18]

*(continued on next page)*

---

[18] Securly, *Make Online Safety Simple with Cloud-Based Web Filtering*, available at https://www.securly.com/site/assets/product-briefs/filter.pdf (last accessed Jan. 8, 2024).

27.     As captured by Defendant's since-deleted flow chart, Securly's Filter analyzes a student's school-issued device both on-campus and off-campus.  The filter then selects, based on the content of the search, to permit the page through the filter or to block it.



***Figure 3.***

28.     Critically, regardless of what pages are permitted to pass through the filter, allowed traffic, encrypted traffic, and blocked traffic are all logged for disclosure.

29.     Specifically, Defendant unlawfully discloses a student's protected educational data by automatically sending some student's parents unsolicited "push" emails that summarize the content of their child's school-issued device activity, which Securly gained by intercepting from the child's device.

30.     Defendant's push emails inform these parents of the videos their children watched, the terms they searched, and the website they visited—regardless of how sensitive this information may be—and without the consent of the child or parent.

**C.     Defendant Leaves it to Schools—Not Parents or Students—to Decide What is Disclosed.**

31.     Instead of vesting the power to consent to disclosures of a student's educational data, Defendant instead "believes in letting schools decide the nature of the activity displayed to parents in Activity logs."[19]



**Figure 4.**

[19] Securly, *What Kind of Activity is Shared with Parents in the Activity Log?*, available https://support.securly.com/hc/en-us/articles/360009607154-What-kind-of-activity-is-shared-with-parents-in-the-activity-log- (last accessed Jan. 8, 2024).

32.     By vesting school districts—and not students or parents—with the ability to decide what educational data is surveilled and intercepted, Defendant strips students of the ability to protect their privacy rights and strips parents of control over the right to know who is watching their children.  Defendant has effectively substituted its own judgment for that of parents like Plaintiff.

33.     Defendant's software operates surreptitiously on school-issued devices to intercept and collect students' educational data, without the knowledge, notice, or consent of the parent or the child using the school-issued device.

34.     Defendant's data aggregation does not stop at just location data.  Along with a student's geolocation data, Defendant combines student online and on-device application activity data to create profiles about individual minor students.  For example, when students access their personal social media accounts, Securly "will collect students' Social Networking Site activity including students' public and private posts on Social Networking Sites and other messaging activity[.]"[20]  Securly notes that it "store[s] students' Social Networking activity with other Student Information."[21]

35.     Plaintiff and S.M. and Class Members were never notified that Defendant was monitoring their student's activity, including geolocation data, terms searched, messages sent and received, videos searched and viewed, and therefore never consented, or had to opportunity to consent, to the surveillance and disclosures.

---

[20] Securly, *Student Privacy Policy*, available at https://www.securly.com/students-privacy (last accessed Jan. 17, 2024).

[21] *Id.*

**D.    Defendant Uses Student's Educational Data to Drive Advertising to Generate New Securly Accounts.**

36.    Defendant sends parents their child's device activities in the form of "teaser" emails encouraging those parents to download Defendant's mobile app to sign up for the paid versions of its software.

37.    These teaser emails from Defendant reveal to the parent snippets of their child's web search history, in-app usage (including messages sent and received), and videos viewed—with the suggestion that parents can see more information by acquiring additional Securly products.

38.    In addition, Defendant's teaser emails are not limited to educational information.  Rather, and unbeknownst to the students, the emails contain both school-related searches and personal internet activities that occurred while at home or at other locations outside of school, often containing harmless, but sometimes very embarrassing, online activities by the children.

39.    Most concerning, Defendant repurposes this type of sensitive information to promote its mobile app[22]:

*(continued on next page)*

---

[22] Securly, *Digital Parenting, Simplified*, available https://www.securly.com/home-parent (last accessed Jan. 8, 2024).



*Figure 5.*

40.    Accordingly, as shown in figures 6 and 7 below, the email-push sent by Securly to parents containing their student's device activity is not sent as a safety alert, but rather as a marketing tool to get parents to sign up for Defendant's mobile app. Defendant does so by leveraging the information it secretly collected about that the student and presents that information in a vague format:

*(continued on next page)*



*Figure 6.*



*Figure 7.*

41.     Specifically, Defendant sends parents merely snippets of the student's private data with a button for the parent to view more. Defendant also uses these emails to cross market additional goods and services to parents as in the example below, advertising for the "HelloFresh" meal service and even providing custom discount codes to parents:



42.     But, by clicking "More," Securly prompts the parent to follow steps to create an account to access the data it teases:



**Figure 8[23]**

43.     Once the parent has clicked through or followed the QR code, the parent is presented with the terms of service and privacy policy applicable to the Securly website. As the privacy policy explains, Securly "automatically collect[s] information about [the visitor] through [the visitor's] use of our Services, including log files, IP address, app identifier, advertising ID, location info, browser type, device type, domain name, the website that led you to our Services, the website to which you go after leaving our Services, the dates and times your access our Services, and the links you click and your other activities within the services."[24]  Securly then parlays this data to "work with third parties such as network advertisers to assist [Securly] in displaying advertisements on third-party websites, and to evaluate the success of [its] campaigns."[25]  By directing

---

[23] Figure 8 is a screenshot of the page a user is taken to after clicking the "More" option.  The QR code has been slightly altered to prevent scanning and protect privacy.

[24] Securly, *Privacy Policy*, available https://www.securly.com/privacy (last accessed Jan. 17, 2024).

[25] *Id.*

parents to the website, Securly is able to leverage the collection of student educational data to generate website engagement for commercial purposes.

44.     Concerningly, an October 6, 2023, email from SPPS explained that "on Tuesday, October 10, 2023, SPPS will turn on a new feature in Securly called 'Enhanced Privacy Mode.'  With this feature, parents and guardians will no longer receive email summaries of their student's iPad internal browsing activity."  Ironically, despite the feature's name, S.M. and her classmates continued to have her iPad activity disclosed via email summaries:

| Your child ███ activity report | |
|---|---|
| **Securly** <noreply@securly.com> Reply-To: Securly <noreply@securly.com> To: ████████ | Tue, Nov 7, 2023 at 1:10 AM |

45.     Because Plaintiff and Class Members were never provided with advanced notice of the surveillance, or an opportunity to consent to the disclosure, Plaintiff and members of the class were never informed of the purpose and intended use of Securly's data collection, whether they had an opportunity or ability to refuse data collection, whether there would be consequences for denying or permitting data collection, and what, if any, other entities were permitted to collect such data.

46.     Accordingly, Plaintiff has Article III standing by way of her suffering from the following concrete harms that have come as a direct and proximate result of the Defendant's conduct and violations of law.  Specifically, Plaintiff suffered emotional harm by way of annoyance, invasion of privacy by way of disclosure of private facts,

invasion of privacy by intrusion upon seclusion, and through non-disclosure of required information.

**CLASS ALLEGATIONS**

47.     **Class Definition.**  Plaintiff seeks to represent a Minnesota class defined as (the "Class"):

> All students enrolled in any Minnesota school during the 2023 school year whose educational data was intercepted, recorded, and disclosed by Defendant while using a school-issued device.

48.     Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate.

49.     **Numerosity.**  Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of students in the Saint Paul Public Schools district who are members of the Class and who have been damaged by Defendant's unlawful disclosures.

50.     **Commonality and Predominance.**  There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class Members include:

> (a)     Whether Defendant, or SPPS on behalf of, or in coordination with Defendant, provided students and parents with notice or an opportunity to consent or decline to, the collection and disclosure of private data;
>
> (b)     Whether the data Defendant collected is private educational data;
>
> (c)     Whether Defendant's disclosure of Plaintiff's educational data was subject to an exception under the MGDPA;

(d)     Whether Defendant used the data it collected for a commercial purpose like marketing and Securly account signups;

(e)     Whether Defendant collected students' geolocation data; and

(f)     Whether the nature of Defendant's contract with SPPS shields Defendant from liability under the MGDPA.

51.     **Typicality.**  Plaintiff's claims are typical of the claims of the Class because the named Plaintiff's minor child, like members of the Class, is a K-12 student enrolled in a Saint Paul Public Schools school, was issued a device with Securly tracking software installed, and had educational data collected and disclosed without notification and consent.

52.     **Adequacy.**  Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiff and her counsel are committed to vigorously prosecuting this class action.  Neither Plaintiff, nor her counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff is able to fairly and adequately represent the interest of the Class.  Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this complaint to include additional Class Representatives to represent the Class or additional claims as may be appropriate.

53.     **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the

claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and the court system, resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with Minnesota privacy law.

54. **Article III Standing**. The Class has Article III standing by way of suffering from concrete harms that have come as a direct and proximate result of the Defendant's conduct and violations of law. Specifically, the Class suffered emotional harm by way of annoyance, invasion of privacy by way of disclosure of private facts, invasion of privacy by intrusion upon seclusion, and through non-disclosure of required information.

<u>COUNT I</u>

**Violation of Minnesota Government Data Practices Act ("MGDPA")**

**Minn. Stat. §§ 13, *et seq.***

**(On Behalf of the Class)**

55. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56. The MGDPA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data." Minn. Stat. § 13.01, subd. 3.

57. Specifically, Minn. Stat. § 13.32, subd. 3 prohibits the disclosure of educational data on individuals unless an exception applies. *See* Minn. Stat. § 13.32, subd. 3.

58. S.M. is a student because S.M. is an individual currently enrolled at a public educational agency. *See* Minn. Stat. § 13.32, subd. 1(e)

59. S.M. is an "individual" because S.M. is a natural person. *See* Minn. Stat. § 13.02, subd. 8.

60. Plaintiff is a "parent" as defined by the statute because Plaintiff is a "parent of a student," is a "natural parent" or "a guardian." *See* Minn. Stat. § 13.32, subd. 1(c).

61. Plaintiff's device is a "school-issued device" because it is a piece of hardware containing software, that the school district, acting with Securly, provided to Plaintiff's child for that child's dedicated personal use. *See* Minn. Stat. § 13.32, subd. 1 (d).

62. Defendant Securly, Inc. is a corporation and therefore a person. *See* Minn. Stat. § 13.02, subd. 10.

63. The Saint Paul Public Schools district is a political subdivision because it is a school district. *See* Minn. Stat. § 13.02, subd. 11.

64. Defendant Securly, Inc. is a "responsible authority" because it is an individual designated by the Saint Paul Public Schools, a political subdivision, "as the individual responsible for the collection, use, and dissemination" of data on individuals.

*See* Minn. Stat. § 13.02, Subd. 16(b).

65.     Defendant Securly, Inc. is a technology provider because Defendant
contracts with a public educational agency to provide Plaintiff's child with a school
issued device for use and receives and maintains educational data pursuant to its contract
with the educational agency.  *See* Minn. Stat. § 13.32, subd. 1(g)(1)-(2).

A.      The data which Defendant unlawfully disclosed is educational data because
that data relates to S.M., an individual, and is maintained by Defendant, a person, acting
for the educational agency.  *See* Minn. Stat. § 13.32, subd. 1(a). ***Violation of Minn. Stat.
§ 13.32, Subd. 13(e)***

61.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62.     Minn. Stat. § 13.32, subd. 13(e) prohibits technology providers from
"sell[ing], shar[ing], or disseminat[ing] educational data, except as provided by this
section or as part of a valid delegation or assignment of its contract with a public
educational agency."

63.     Defendant is a technology provider.  *See* Minn. Stat. § 13.32, subd. 1(g)(1)-
(2).

64.     At all relevant times, Defendant surveilled and collected educational data.

65.     At all relevant times, Defendant, without receiving informed consent from
Plaintiff or Plaintiff's child, shared and disseminated S.M.'s educational data by
automatically sending push emails containing S.M.'s searches and school-issued device
activity to parents.

66.     On behalf of herself and the class, Plaintiff seeks: (1) declaratory relief; (2)

injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring that Defendant comply with the MGDPA's requirements prohibiting audio-visual, keystroke and web-activity tracking, and disclosure; (3) statutory damages of not less than $1,000 and not more than $15,000 for each willful violation of Minn. Stat. § 13.32, Subd. 13(e), pursuant to Minn. Stat. § 13.08, Subd. 1; and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to Minn. Stat. § 13.08, Subd. 4(a).

**B.** ***Violation of Minn. Stat. § 13.32, Subd. 13(f)***

65.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66.     Minn. Stat. § 13.32, subd. 13(f) prohibits technology providers from using "educational data for any commercial purpose, including but not limited to marketing or advertising to a student or parent."

67.     Defendant is a technology provider.  *See* Minn. Stat. § 13.32, Subd. 1(g)(1)-(2).

68.     At all relevant times, Defendant surveilled and collected educational data.

69.     At all relevant times, Defendant used S.M.'s collected educational data in its push emails to Plaintiff.  Defendant's push emails featured snippets of S.M.'s device activity, with a clickable link to access the remaining pieces of collected educational activity.  However, despite Defendant making one piece of educational data available to Plaintiff, Plaintiff could not see the remaining pieces of data which Defendant teased, until Plaintiff signed up for a Securly account.  Accordingly, Defendant used S.M.'s educational data that it had collected to market or advertise to Plaintiff the benefit of

opening an account with Securly.

70.     On behalf of herself and the class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring that Defendant comply with the MGDPA's requirements prohibiting using educational data for marketing, advertising, and commercial purposes; (3) statutory damages of not less than $1,000 and not more than $15,000 for each willful violation of Minn. Stat. § 13.32, Subd. 13(f), pursuant to Minn. Stat. § 13.08, Subd. 1; and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to Minn. Stat. § 13.08, Subd. 4(a).

**C.     *Violation of Minn. Stat. § 13.32, Subd. 14***

69.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

70.     Section § 13.32, Subd. 14(a)(1)-(3) prohibits a technology provider from "electronically access[ing] or monitor[ing]: (1) any location-tracking feature of a school-issued device; (2) any audio or visual receiving, transmitting, or recording feature of a school-issued device; or (3) student interactions with a school-issued device, including but not limited to keystrokes and web-browsing activity."

70.     Defendant is a technology provider.  *See* Minn. Stat. § 13.32, subd. 1(g)(1)-(2).

71.     At all relevant times, Defendant surveilled and collected educational data from S.M.'s school-issued device and disclosed that data.

72.     At all relevant times, Defendant also collected S.M.'s geolocation data, audio and visual data received, and S.M.'s keystroke and browsing history in the form of

S.M.'s search terms and messages.

73.     On behalf of herself and the class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring that Defendant comply with the MGDPA's requirements prohibiting geolocation, audio-visual, and keystroke and web-activity tracking; (3) statutory damages of not less than $1,000 and not more than $15,000 for each willful violation of Minn. Stat. §  13.32, Subd. 14, pursuant to Minn. Stat. §§ 13.08, Subd. 1; and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to Minn. Stat. §§ 13.08, Subd. 4(a).

## Count II.

### Violation of Electronic Communications Privacy Act ("ECPA")

### 18 U.S.C. § 2511(1) et seq.

### Unauthorized Interception, Use, And Disclosure

### (On Behalf of the Class)

74.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.     To plead a prima facie case under the ECPA Plaintiff must show that Defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device. *Mekhail v. N. Mem'l Health Care*, No. 23CV00440KMMTNL, 2024 WL 1332260, at *2 (D. Minn. Mar. 28, 2024).

76.     Title 18 U.S.C. § 2511(1)(a) applies to the person who willfully intercepts such communications and subsection (c) to any person who, knowing or having reason to

know that the communication was obtained through an illegal interception, willfully discloses its contents. *Bartnicki v. Vopper*, 532 U.S. 514, 515, 121 S. Ct. 1753, 1754–55, 149 L. Ed. 2d 787 (2001).

77.     "Intercept" is defined under the Wiretap Act as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U. S.C. § 2510(4).

78.     "Contents" are defined as "any information concerning the substance, purport, or meaning of [a] communication." 18 U. S. C. § 2510(8).

79.     When Defendant intercepted the Plaintiff's and other class members' communications, it was not a "party to the communication[s]" at issue. 18 U.S.C. § 2511(2)(d).

80.     The foregoing acts and omissions therefore constitute numerous and multiple violations of 18 U.S.C. § 2511(1) et esq.

81.     As a result of each and every violation thereof, on behalf of herself and the class, Plaintiff seeks statutory damages of $10,000 or $100 per day for each violation of 18 U.S.C. §2510 et seq under 18 U.S.C. §2520.

## Count III.

### Violation of the Computer Fraud And Abuse Act (CFFA)

### 18 U.S.C. § 1030, et seq.

### (On Behalf of the Class)

70.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

71.     To plead a prima facie case under the CFFA Plaintiff must show that the Defendant (1) intentionally (2) accessed a protected computer (3) without authorization (4) and as a result caused either a damage or loss. *Cenveo Corp. v. CelumSolutions Software GMBH & Co KG*, 504 F. Supp. 2d 574, 581 (D. Minn. 2007).

72.     "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

73.     Defendant intentionally accessed a protected computer of Plaintiff and the other class members without authorization or consent in violation of the CFAA and caused them to suffer damages in excess of $5,000 as a result in the form of attorneys' fee for the response and investigation into Defendant's violation of the CFAA.

74.     Attorneys' fees incurred responding to an actual CFAA violation to place a Plaintiff in their *ex ante* position are damages and permissible as costs "incurred as part of the response to a CFAA violation, including the investigation of an offense." *A.V. ex rel. Vanderhye,* 562 F.3d at 646. See NCMIC Fin. Corp. v. Artino, 638 F. Supp. 2d 1042, 1065–66 (S.D. Iowa 2009), modified, No. 4:07-CV-00204-JEG, 2009 WL 10669611 (S.D. Iowa Nov. 10, 2009).

75.     The foregoing acts and omissions therefore constitute numerous and multiple violations of 18 U.S.C. § 1030 et seq., CFFA, by this Defendant.

76.     As a result of each and every violation thereof, on behalf of herself and the class, Plaintiff seeks compensatory damages on behalf of herself and the class.

## Count IV.

## Violation of the Wiretap Act

**18 U.S.C. § 2510 et seq.**

**(On Behalf of the Class)**

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     The Wiretap Act, as amended by the Electronic Communications and Privacy Act of 1986, prohibits the intentional interception of any wire, oral, or electronic communication.

79.     To plead a prima facie claim under the Wiretap Act, the Plaintiff and other class members must allege that the Defendant "(1) intentionally (2) intercepted… (3) the contents of (4) an electronic communication, (5) using a  device." *White v. Samsung Elecs. Am., Inc.*, No. 17-1775, 2019 WL 8886485, at *5 (D.N.J. Aug. 21, 2019).

80.     Under 18 U.S.C. § 2520(a) there is a private right of action to any person whose wire, oral, or electronic communication is intercepted.

81.     The Wiretap Act preempt all state laws to the extent that no state may allow access to wire, oral, or electronic communications with less justification than required by federal law.

82.     "Contents" under the Wiretap Act when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication. 18 U.S. Code § 2510(8).

83.     Courts have interpreted contents to refer to the intended message conveyed by the communication (e.g., search terms like "Pennsylvania horse shows") rather than simply record information regarding the characteristics of a message generated in the course of a particular communication (e.g., IP addresses and message routing data). *Graf*

*v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1107 (9th Cir. 2014).

84.     Respondent intercepted the intended message conveyed contents of Plaintiff's and the other class members' electronic communications without consent when each navigated online with devices where Defendant's Securly software had been installed.

85.     Plaintiff and the other class members were unaware Defendant was intercepting their electronic communications and tracking the contents of their communications and interactions online.

86.     Defendant intentionally utilized its software technology as a means of intercepting and acquiring the contents of Plaintiff and the other class members' electronic communications, in violation of 18 U.S.C. § 2511.

87.     Plaintiff and the other class member are persons whose electronic communications were intercepted by Defendant.  As such, Plaintiff and the other class members are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 per day for each violation, actual damages, punitive damages, and reasonable attorneys' fees and costs under 18 U.S.C. § 2520.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violated the statute referenced herein;

(c) For an order finding in favor of Plaintiff on the count asserted herein;

(d) For an award of statutory damages to the extent available pursuant to each of the state and federal counts herein;

(e) For prejudgment interest on all amounts awarded;

(f) For injunctive relief as pleaded or as the Court may deem proper; and;

(g) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of this suit.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 5, 2024

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

By: *s/ Peter F. Barry*

Peter F. Barry, Esq. (#0266577)
1422 Asbury Street
St. Paul, MN 55108-2434
Telephone: (612) 379-8800
E-mail: pbarry@lawpoint.com

*Attorney for Plaintiff*