**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

NICOLE HUNTER, on behalf of her minor child S.M., individually and on behalf of all others similarly situated,

Case No. 24-cv-2159 (DWF/DLM)

Plaintiff,

v.

SECURLY, INC.,

Defendant.

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SECURLY, INC.'S COMBINED MOTION TO STRIKE UNDER RULE 12(f), MOTION TO DISMISS UNDER RULE 12(b)(1), AND MOTION TO DISMISS UNDER RULE 12(b)(6)

---

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

ARGUMENT ........ 11

I. Plaintiff's Immaterial Allegations Should Be Struck Under Rule 12(f) ........ 11

A. The Court should strike all references to "Aware." ........ 12

B. The Court should strike all references to the sale of Student Information. ........ 12

II. Dismissal Is Required Under Rule 12(b)(1) Because Plaintiff Lacks Standing ........ 13

A. Plaintiff's alleged "emotional harm by way of annoyance" is not an adequately pleaded injury-in-fact. ........ 15

B. Plaintiff's alleged privacy harms are not adequately pleaded injuries-in-fact. ........ 16

i. "Invasion of privacy by way of disclosure of private facts" ........ 17

ii. "Invasion of privacy by way of intrusion upon seclusion" ........ 18

III. Plaintiff Fails To State a Claim Under Rule 12(b)(6) ........ 19

A. Plaintiff Fails to State a Claim Under the Minnesota Government Data Practices Act (Count I) ........ 20

i. Plaintiff has not suffered the required damages. ........ 20

ii. Securly's activities are permitted by MGDPA. ........ 21

B. Plaintiff Fails to State a Claim Under Counts II (the Electronic Communications Privacy Act) & Count IV (the Wiretap Act) ........ 25

C. Plaintiff Fails to State a Claim Under the Computer Fraud and Abuse Act (Count III) ........ 27

CONCLUSION ........ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu v. Dickson*,
No. 20-10747, 2023 WL 3668515 (E.D. Mich. May 25, 2023),
*aff'd*, 107 F.4th 508 (6th Cir. 2024) ........ 29

*Anderson v. Indep. Sch. Dist.*,
357 F.3d 806 (8th Cir. 2004) ........ 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 19

*Board of Educ. of Indep. Sch. Dist. No. 92 v. Earls*,
536 U.S. 822 (2002) ........ 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 20

*Brodkorb v. State*,
12-1958, 2013 WL 588231 (D. Minn. Feb. 13, 2013) ........ 11

*C.L.D. v. Wal-Mart Stores, Inc.*,
79 F. Supp. 2d 1080 (D. Minn. 1999) ........ 17

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016) ........ 14

*Cenveo Corp. v. CelumSolutions Software GMBH & Co KG*,
504 F. Supp. 2d 574 (D. Minn. 2007) ........ 27, 28

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ........ 26

*Daigle v. Ford Motor Co.*,
713 F. Supp. 2d 822 (D. Minn. 2010) ........ 11

*Donelson v. Ameriprise Fin. Servs., Inc.*,
999 F.3d 1080 (8th Cir. 2021) ........ 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 16

*Feldman v. Star Trib. Media Co. LLC*,
659 F. Supp. 3d 1006 (D. Minn. 2023) .................................................................. 18

*George D. ex rel. G.D. v. NCS Pearson, Inc.*,
No. 19-2814, 2020 WL 3642325 (D. Minn. July 6, 2020) ......................................... 18

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)..................................................................................... 25

*Gunn v. Minton*,
568 U.S. 251 (2013) .................................................................................................. 13

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*,
982 F.3d 1069 (7th Cir. 2020) .................................................................................. 16

*M. K. v. Google LLC*,
No. 21-cv-08465, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) .................................. 8

*McNaught v. Nolen*,
76 F.4th 764 (8th Cir. 2023) ..................................................................................... 14

*Mekhail v. N. Mem'l Health Care*,
No. 23-CV-00440, 2024 WL 1332260 (D. Minn. Mar. 28, 2024) .............................. 25

*NCMIC Fin. Corp. v. Artino*,
638 F. Supp. 2d 1042 (S.D. Iowa 2009), modified, No. 4:07-CV-00204-JEG, 2009 WL 10669611 (S.D. Iowa Nov. 10, 2009)........................................... 28, 29

*Ojogwu v. Rodenburg L. Firm*,
26 F.4th 457 (8th Cir. 2022) ..................................................................................... 15

*In re Pawn Am. Consumer Data Breach Litig.*,
No. 21-CV-2554, 2022 WL 3159874 (D. Minn. Aug. 8, 2022) ................................. 15

*Pipeline Prods., Inc. v. S&A Pizza, Inc.*,
No. 4:20-00130, 2020 WL 4506090 (W.D. Mo. Aug. 5, 2020) ................................. 29

*Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
967 F. Supp. 1148 (D. Minn. 1997) ........................................................................... 4

*In re Potash*,
No. 3-93-197, 1994 WL 1108312 (D. Minn. Dec. 5, 1994) ........................... 11, 12, 13

*Rivkin v. Hennepin Cnty.*,
No. CIV. 01-670, 2002 WL 31777800 (D. Minn. Dec. 12, 2002) .............................. 20

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976) ........................................ 13

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
393 U.S. 503 (1969) ........................................ 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................ 13, 14

*Van Buren v. United States*,
593 U.S. 374 (2021) ........................................ 27

**Statutes**

Children's Online Privacy Protection Act of 1998, 15 U.S.C. § 6501-6505
(COPPA) ........................................ 8, 9

Consumer Fraud and Abuse Act, 18 U.S.C. § 1030 (CFAA) ........................ 27, 28, 29, 30

Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2523 .................... 25, 26, 27

Federal Educational Rights and Privacy Act, 20 U.S.C. § 1232g (FERPA) ............. *passim*

20 U.S.C. § 1232h ........................................ 9

47 U.S.C. § 254(h) ........................................ *passim*

47 U.S.C. § 254(l) ........................................ 25

Minnesota Government Data Practices Act (MGDPA) ........................ 20, 21, 25

Minn. Stat. § 13.08, Subd. 1 ........................................ 20

Minn. Stat. § 13.32, Subd. 13 ........................................ 21, 22

Minn. Stat. § 13.32, Subd. 14 ........................................ 23, 24, 25

Minn. Stat. § 121A.031, Subd. 5(b)(2)-(3) ........................................ 23

**Constitution**

U.S. Const. art. III, § 2, cl. 1 ........................................ 13

**Other Authorities**

16 C.F.R. pt. 312 (2013) ........................................ 8

34 C.F.R. § 99.31 (2012) .......... 2, 3, 4, 21

47 C.F.R. § 54.520 (2011) .......... *passim*

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2004) .......... 11

Federal Communications Commission, *E-Rate - Schools & Libraries USF Program,* last updated July 16, 2024, https://www.fcc.gov/general/e-rate-schools-libraries-usf-program .......... 24

FTC, Complying with COPPA: Frequently Asked Questions, FAQ N.1, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited July 31, 2024) .......... 3, 8

Fed. R. Civ. P. 12(b)(1) .......... 1, 13

Fed. R. Civ. P. 12(b)(6) .......... 1, 14, 19

Fed. R. Civ. P. 12(f) .......... 11

Defendant Securly, Inc. ("Securly") respectfully submits this Memorandum in support of its Combined Motion to Strike and to Dismiss Plaintiff's Complaint for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

More than two decades ago, as the internet was becoming available in classrooms across the country, Congress recognized that schools would need guardrails to protect students with access to the World Wide Web and passed the Children's Internet Protection Act ("CIPA").[1] CIPA requires schools to develop and enforce internet safety measures that block or filter student access to obscene or pornographic "visual depictions" and other potentially harmful materials. In addition, schools are required by this federal law to establish a program for "monitoring the online activities of minors."[2] Securly is a mission-driven education technology company that helps school districts and education institutions (collectively "schools") fulfill these statutory obligations by providing software services that enable schools to monitor for inappropriate materials.

Plaintiff Nicole Hunter attempts to allege that Securly's student-protection services—the tools used by her child's school to meet federal requirements—are illicitly surveilling or hacking the school-owned iPad issued to Plaintiff's daughter, S.M.,

[1] 47 U.S.C. § 254(h)(5)(B)(i)-(ii) (requiring schools and libraries receiving federal broadband rates to filter and monitor online activity on school computers).
[2] *Id.* § 254(h)(5)(B)(i); 47 C.F.R. § 54.520(c)(i) (2011).

seeking to twist required internet-safety practices into violations of Minnesota law[3] or federal statutes designed to punish serious criminal activity. Specifically, Plaintiff asserts that Securly is tracking the use of school-issued devices and then selling, marketing, or otherwise improperly disseminating that data. While Securly helps schools monitor student activity, consistent with its contracts and state and federal law, the data collected belongs to the schools; and Securly cannot sell or use that data for any purposes other than providing services to the schools.

Plaintiff's entire complaint collapses once it is recognized that the Federal Educational Rights and Privacy Act ("FERPA")[4] authorizes schools to disclose student information in connection with Securly's software and that Securly's monitoring is therefore permitted—and, in part, required—by federal law.[5] School personnel voluntarily install Securly's software and are the primary administrators of the tools. Schools authorize Securly's collection of student data as part of their engagement, making Securly their agent to meet the schools' statutory and ethical obligations to protect students using school devices.

Federal law and regulatory guidance recognize that schools obviously need to outsource certain technology functions requiring data sharing to vendors and allow

[3] Accepting Plaintiff's constructions of Minnesota law would also present substantial questions of conflict preemption.
[4] 20 U.S.C. § 1232g(b); 34 C.F.R. § 99.31(a)(1)(i)(B) (authorizing educational agencies to disclose personally identifiable information from the student's education records to a contractor, consultant, volunteer, or other party to whom an agency or institution has outsourced institutional services or functions without parental or student consent).
[5] *See supra* note 1.

schools to consent on parents' behalf to vendors' collection of student data—particularly given the unfeasibility of having each parent approve or disapprove each piece of software installed on school computers.[6] Securly's activities are, therefore, neither unauthorized nor illicit but legal and necessary.

This Court should strike from the Complaint certain immaterial allegations, including facts about a Securly product called "Aware" that S.M.'s school never even purchased, as well as the allegation that Securly sells student data – for which no good-faith basis exists.

What remains of the Complaint should then be dismissed for lack of Article III standing because Plaintiff does not allege a concrete injury. Even if the Court finds Plaintiff has standing, the Complaint should be dismissed for failure to state any of its asserted claims. The Complaint attempts to apply these statutes to a context and a business for which they are entirely inappropriate. Securly's software helps schools protect children, and Plaintiff's efforts to undercut this important protection should be rejected.

## FACTUAL BACKGROUND

**<u>Securly.</u>** Securly is an educational technology company that has provided more than 20,000 schools with software and services. Doc. 1, Compl. ¶ 2; Declaration of

[6] 34 C.F.R. § 99.31 (2012) (allowing a school to share student information with a "party to whom [the school] has outsourced institutional services or functions"); *see also* FTC, Complying with COPPA: Frequently Asked Questions, FAQ N.1, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited July 31, 2024) [hereinafter *FTC Guidance*].

Bharath Madhusudan, Chief Executive Officer, Securly ("Decl.") ¶¶ 4-5; Securly, https://www.securly.com/ (last visited July 31, 2024), Request for Judicial Notice ("RJN") Ex. 1.[7] Its services, which include cloud-based website filtering and parental controls and reports, help "keep students safe online and at school" and "help students stay focused and engaged in learning." Compl. ¶ 2.

Securly does not secretly install tools on student-owned devices. Decl. ¶¶ 4, 9. Instead, schools purchase, install, and operate Securly's tools on school-owned devices. Compl. ¶¶ 31-32. Securly functions as a "school official," performing an "outsourced institutional service" on behalf of the school, as permitted by federal law.[8] By providing these services to schools, Securly has access to personal information about students ("Student Information"). All Student Information[9] Securly collects belongs to the schools; schools control what is collected, how it is used, with whom it is shared, and when it is deleted. RJN Ex. 2; Decl. ¶¶ 20, 29. The Student Information that Securly collects is not accessed, shared, or used by Securly—or any other party—for any purpose other than for the benefit of the school for which it was collected. Decl. ¶ 30.

---

[7] The Complaint quotes extensively from Securly's website, and information from Securly's website largely forms the basis of Plaintiff's factual allegations. As such, the Complaint incorporates these materials by reference, and the Court should therefore consider them when ruling on this motion. *See Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (noting district courts may consider extra-pleading material "necessarily embraced by the pleadings").

[8] 34 C.F.R. § 99.31(a)(1)(i)(B) (explaining that schools may share personal information from education records without parental consent if the disclosure is to a "party to whom an agency or institution has outsourced institutional services or functions").

[9] Student Information is part of the school's "education records," as defined under federal law. 20 U.S.C. § 1232g(a)(4)(A).

**Plaintiff.** Plaintiff is the mother of S.M., who attends a Saint Paul Public Schools ("SPPS") middle school. Compl. ¶¶ 14-15. S.M.'s school provided her with a school-owned iPad on which it had installed Securly software in conjunction with the school's Covid-era distance-learning program. *Id.* ¶¶ 16-17. Securly's software allegedly "tracked S.M.'s geolocation, keystrokes and web searches, websites visited, and videos watched." *Id.* ¶ 17. Plaintiff alleges that she was not notified of such monitoring before it began or "that S.M.'s video-viewing habits would be shared with third parties," though she never identifies any such third parties. *Id.* ¶¶ 18-19.[10] Plaintiff does not state when S.M. received the SPPS-owned iPad but alleges Plaintiff received notifications from SPPS and Securly in September 2022 about the monitoring services. *Id.* ¶¶ 20-21. Plaintiff alleges that SPPS then "acknowledged" it had used Securly "for a few years as [SPPS's] content filtering tool that helps the district keep students safe on the internet when using their iPads at school and at home." *Id.* at 21. Plaintiff does not say how SPPS "acknowledged" that information, but identical language appears on SPPS's website;[11] the SPPS website

[10] The only other reference to "third parties" in the Complaint comes in the context of how Securly handles limited data associated with visitors to its website, per its Website Privacy Policy, not how it handles Student Information, per its Student Privacy Policy. *See* Compl. ¶ 43.

[11] Securly Home, Saint Paul Public Schools, https://it.spps.org/data-security/content-filtering/securly-home ("SPPS has used Securly for a few years as our content filtering tool that helps the district keep students safe on the internet when using their iPads at school and at home. **Click here to see the type of content that is filtered on school iPads.**").

also includes extensive additional information about the iPad program and how SPPS keeps students safe online.[12]

**The Relevant Products.** The Complaint describes Securly's products and services, without specifying which products SPPS actually installed. *See* Compl. ¶¶ 19-43. Notably, SPPS has purchased only "Filter" and "Home"; it did not purchase the "Aware" product, *see* Decl. ¶¶ 15-16, 18, cited in the Complaint (*see* ¶¶ 3, 19b, 20b, 21b, 34). Filter is a "cloud-based web filter designed specifically for schools" that blocks sites that could be harmful to students and logs network traffic on school devices, as schools are required to do under CIPA. Compl. ¶ 22; Decl. ¶ 15. While SPPS has access to flagged sites and searches, SPPS has not enabled related notifications, and its faculty groups are not set up to receive alerts. Decl. ¶ 17.

Home "offers schools the ability to customize parents' control over their child's school device when it goes home." Compl. ¶ 4; Decl. ¶¶ 18-19. Using Securly's Home app, which is provided freely to parents as part of the school's services, parents can also "pause internet access when the device is away from school, schedule offline time for the device, and opt-in to receive flagged activity notifications for their child," among other safeguards. Compl. ¶ 4; Decl. ¶ 8. At the school's direction, Home also emails parents "a snapshot of their child's online activity every week," noting that parents can also receive such information through the Home app. Compl. ¶ 4; Decl. ¶¶ 8, 29.

[12] *See* iPad Security and Privacy, Saint Paul Public Schools, https://www.spps.org/about/departments/infinite-campus/personalized-learning-through-technology-referendum-pltt/ipad-security-and-privacy; iPad, Internet, and App Support, Saint Paul Public Schools, https://www.spps.org/families/ipad-internet-and-app-support.

**<u>Securly's Privacy Policies.</u>** Two privacy policies govern the different types of data Securly collects: the Student Privacy Policy[13] and the Website Privacy Policy.[14] *See* Compl. ¶ 24 n.16, ¶ 43 n.24. Plaintiff's claims all relate to Securly's use of Student Information, which is subject to the Student Privacy Policy. RJN Ex. 2. The Student Privacy Policy explicitly states that it "covers [Securly's] use of 'Student Information'," i.e., "data that reasonably can be used to identify a student or that reasonably relates to a student," and further states that, with respect to Student Information, it "is separate from and supersedes our Website Privacy Policy to the extent of any conflict or inconsistency." *Id.*

The Website Privacy Policy, conversely, applies to information collected from Securly's website users and customers.[15] It clearly states: "**This Privacy Policy does not apply to . . . the personal information that we process on behalf of schools and other institutional customers that use our services.**" RJN Ex. 3. The Website Privacy Policy goes on to note: "Any personal information we collect about students who are children under 13 years old or that is processed on behalf of our school institutional customers *will be treated in accordance with our Student and COPPA Privacy Policy* as well as our

[13] Securly, Student Privacy Policy, https://www.securly.com/students-privacy (last visited July 31, 2024), RJN Ex. 2.
[14] Securly, Privacy Policy, https://www.securly.com/privacy (last visited July 31, 2024), RJN Ex. 3.
[15] *See* RJN Ex. 3 ("This Privacy Policy describes how we collect, store, use and disclose, or otherwise process (collectively 'process') information, including personal information, that we obtain about visitors and users of our website www.securly.com (the 'Site') as well as users of our software and related services including the Securly Parent Portal and mobile applications.").

Terms of Use and is also subject to the policies and practices of the institution on whose behalf we are processing the information." RJN Ex. 3 (emphasis added).

Quoting from the Student Privacy Policy, Plaintiff notes that when Securly's services are "used on a personal computing device owned by schools, [Securly] may use geolocation information to determine the location of the device . . . [Securly] may also use elements of usage and analytics information (such as IP address) to determine generalized location." Compl. ¶ 24. What Plaintiff elides: "Such information is specific to *the device only* and is *not specific to any student or child.*" RJN Ex. 2. That is, to the extent Securly software provides geolocation services, those services would track the location and datapoints relevant only to the *school*-issued device. There is no basis for any allegation that Securly or schools track students when they are not carrying such devices.

The Student Privacy Policy acknowledges that Securly is "covered as an operator" under the Children's Online Privacy Protection Act of 1998 ("COPPA"). RJN Ex. 2. It also explains that schools contracting for Securly services consent to the collection of student data on behalf of the parents. RJN Ex. 2; *see* 15 U.S.C. § 6501, *et seq.*; 16 C.F.R. pt. 312 (2013). Under COPPA, schools "may act as the parent's agent and can consent under COPPA to the collection of [student] information on the parent's behalf." *FTC Guidance.*[16] Further, Securly is "committed to responsible data privacy protections, and [its] systems are designed in accordance with [FERPA], [COPPA], and the Protection of

[16] *M. K. v. Google LLC*, No. 21-cv-08465, 2023 WL 4937287, at *3 (N.D. Cal. Aug. 1, 2023) (taking judicial notice of *FTC Guidance*).

Pupil Rights Amendment ("PPRA"), 20 U.S.C. § 1232h, in all applicable respects with regard to the collection, use, disclosure, and retention of Student Information." RJN Ex. 2. Securly is also certified through iKeepSafe, which demonstrates compliance with laws protecting Student Information, including FERPA, COPPA, and other applicable data privacy laws. Decl. ¶ 32.

Under these laws, Securly provides schools notice of its Student Information processing practices and relies on schools to supply disclosures of privacy practices to parents and students.[17] RJN Ex. 2. While the Complaint alleges that Securly software is installed on school-owned devices without Plaintiff's knowledge or consent (*see, e.g.*, ¶¶ 18-19), Securly, through the Student Privacy Policy, "require[s] schools to consent to [the] collection and use of Student Information, on behalf of parents." RJN Ex. 2. As such, a school deploying Securly software must acknowledge that it is "authorized to consent to [Securly's] collection, use and disclosure" of Student Information. Securly, Terms of Service, https://www.securly.com/terms-and-conditions (last visited July 31, 2024), RJN Ex. 4.

Nevertheless, Plaintiff twists the separate privacy policies to suggest that Securly is improperly using Student Information it lawfully collects on behalf of schools. Compl. ¶¶ 36-43. First, Plaintiff alleges that Securly informs parents of their respective children's computer activity via "teaser emails" that include a link for parents to download Securly's Home app. *Id.* ¶¶ 36-37. The Complaint does not say parents are asked to

[17] As noted above, SPPS has provided disclosures on its website. *See supra* notes 11-12.

*purchase* the app because there is not an advertisement for a sale; the app is provided at no cost to parents as a service to schools. *See* Decl. ¶ 8. Next, Plaintiff falsely alleges that Securly "also uses these emails to cross market additional goods and services to parents as in the example below, advertising for the 'HelloFresh' meal service and even providing custom discount codes to parents." Compl. ¶ 41. A second glance would have revealed that the HelloFresh offer and "custom discount code" Plaintiff cites are not advertising from Securly, but rather connected with a YouTube video, https://www.youtube.com/watch?v=FRc7C6WfKQM, linked in the email report to show parents what videos the student had viewed. Undaunted, Plaintiff alleges that clicking a link in the email brings a parent to the Securly website and Website Privacy Policy, which Plaintiff then quotes at length even though it does not apply to Student Information. Plaintiff alleges Securly "parlays" certain data about its website visitors—non-Student Information—to "work with third parties" to advertise its services. *Id.* ¶ 43.

In summary, Plaintiff alleges that, simply by including a link to its website in school-authorized emails to parents about their children's use of school computers, Securly has somehow misused Student Information for commercial purposes, *see id.* ¶ 43—despite all indications to the contrary, *see, e.g.*, RJN Ex. 2 ("(1) We do not collect Student Information for the purpose of sale of such information in any way or for building profiles for commercial purposes not related to the provision of the Services. (2) We do not use Student Information for advertising.").

## ARGUMENT

### I. Plaintiff's Immaterial Allegations Should Be Struck Under Rule 12(f)

The Court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f). "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Brodkorb v. State*, 12-1958, 2013 WL 588231, at *16 (D. Minn. Feb. 13, 2013) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2004)). "Immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded[.]" Wright & Miller, *Federal Practice and Procedure* § 1382 (citing several cases).

Courts have "liberal discretion to strike pleadings under Rule 12(f)." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091 (8th Cir. 2021) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)). Though harsh medicine and generally "disfavored," "it is sometimes appropriate to strike pleadings." *Id.* (citing *BJC Health*, 478 F.3d at 916-18); *see also Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 830 (D. Minn. 2010).

A motion to strike "will be granted if the disputed matter 'is irrelevant under any state of facts which could be proved in support of the claims being advanced.'" *In re Potash*, No. 3-93-197, 1994 WL 1108312, at *4 (D. Minn. Dec. 5, 1994) (quoting *Reiter's Beer Distribs., Inc. v. Schmidt Brewing Co.*, 657 F. Supp. 136, 143 (E.D.N.Y. 1987)). In *Potash*, the court struck historical background that unfairly reflected on the defendant,

stating "we do not embrace the pleading of . . . background which imparts a predominately prejudicial bite." *Id.* at *7.

**A. The Court should strike all references to "Aware."**

Plaintiff includes numerous claims about Securly's Aware software. *See* Compl. ¶¶ 3, 19b, 20b, 21b, 34.[18] But SPPS has never purchased or used the Aware software. Decl. ¶ 16. All references to that product should, therefore, be stricken as immaterial and impertinent. Allowing these allegations to remain paints a false picture of the monitoring Securly provides SPPS. Contrary to the Complaint (¶¶ 19b-20b), Securly has not used "artificial intelligence" on S.M.'s web log. Plaintiff should not be permitted to include and bold statements from a description of the "Aware" product in a case that does not involve that product. *See id.* ¶ 21b. Like the prejudicial historical background in *Potash*, the references to "Aware" are prejudicially irrelevant, immaterial, and impertinent.

**B. The Court should strike all references to the sale of Student Information.**

Securly does not sell Student Information to anyone, including parents, *see* Decl. ¶ 26, as noted in the Student Privacy Policy, RJN Ex. 2, and any such suggestion should be stricken from the Complaint. It is slanderous to make such a claim without any good faith basis, and the claim seems designed to paint Securly in a false light to parents and schools.

Plaintiff further alleges that Securly directs parents "to sign up for the paid versions of the software." Compl. ¶ 36. Naturally there is no citation for that allegation because there could be none—Securly does not *sell* its app or software to parents. *See* Decl. ¶¶ 5-

[18] The Complaint's paragraph numbers begin to repeat on pages 6, 10, 25, 26, 27, and 29. Such repeat paragraphs are denoted with a "b."

8. Such allegations are not only incorrect but inflammatory and should also be stricken as prejudicially irrelevant. *See In re Potash*, 1994 WL 1108312, at *7.

**II. Dismissal Is Required Under Rule 12(b)(1) Because Plaintiff Lacks Standing**

Regardless of whether the Court grants Securly's motion to strike any portion of Plaintiff's allegations, the entire Complaint requires dismissal because Plaintiff lacks standing to bring this case.

The Constitution limits the "federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021); *see* U.S. Const. art. III, § 2, cl. 1. Absent a case or controversy, a plaintiff lacks Article III standing, and the action must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. *See Gunn v. Minton*, 568 U.S. 251, 256 (2013). To establish standing to sue in federal court, Plaintiff must establish that she has "suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423.[19] As the Supreme Court has stated, it can be boiled down to this: "No concrete harm, no standing." *Id.* at 442.

To determine if an alleged harm is concrete, courts "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as

[19] Plaintiff is not relieved of this obligation by bringing this action on behalf of a putative class. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975))).

providing a basis for a lawsuit in American courts." *McNaught v. Nolen*, 76 F.4th 764, 769–70 (8th Cir. 2023) (quoting *TransUnion LLC*, 594 U.S. at 424). Plaintiffs must allege more than a risk of harm that never materializes, and merely alleging that a defendant violated a statute (even a statute that includes a private right of action) is not sufficient to establish concrete injury without some further allegation of injury-in-fact. *TransUnion LLC*, 594 U.S. at 437-38.

A defendant may challenge a plaintiff's ability to show the existence of subject-matter jurisdiction facially or factually. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). For a factual challenge, the presumption of truthfulness normally accorded a complaint's allegations does not apply; instead, the court may "consider[] matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* Securly brings a factual challenge here and accordingly submits a Declaration from Securly's CEO for the Court's consideration in support of that challenge.

In support of her Article III standing, Plaintiff states she[20] experienced "emotional harm by way of annoyance, invasion of privacy by way of disclosure of private facts, invasion of privacy by intrusion upon seclusion, and through non-disclosure of required information." Compl. ¶ 46; *see also id.* ¶ 54 (alleging the class experienced the same "concrete harms"). These allegations are insufficient, especially when weighed against the legal requirement that SPPS use filtering software; frustration with the law's requirements

---

[20] Ms. Hunter is the Plaintiff bringing suit on behalf of her daughter, S.M. Compl. at 1, ¶ 15. Therefore, although "Plaintiff" is the subject of Paragraph 46, the person who actually must have been suffered "concrete harms" is S.M.

is not an actionable harm, nor is disagreement with SPPS's decision to purchase, install and use Securly's software. As several courts have held, "annoyance" is not enough. While invasions of privacy can establish standing, sharing a middle-school student's web activities with her mother is not one of those circumstances; students have no reasonable expectation of privacy on a school-owned and -issued computer meant to be used for distance learning. And Securly and SPPS fully disclosed all required information. Accordingly, the constitutional minimum of having suffered some injury plausibly traceable to Securly is absent from this Complaint.

### A. Plaintiff's alleged "emotional harm by way of annoyance" is not an adequately pleaded injury-in-fact.

Plaintiff's conclusory allegation of S.M.'s "annoyance," without any description of the "emotional harm" S.M. allegedly experienced, does not establish Article III standing. While emotional distress can be a concrete harm, for instance when caused by theft of private information, *see, e.g.*, *In re Pawn Am. Consumer Data Breach Litig.*, No. 21-CV-2554, 2022 WL 3159874, at *4 (D. Minn. Aug. 8, 2022), "stress by itself with no physical manifestations and no qualified medical diagnosis" does not "amount to a concrete harm," *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022) (quoting *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021)) (vacating Fair Debt Collection Practices Act judgment for lack of concrete harm). As the Seventh Circuit has noted, "it is hard to imagine that anyone would file any lawsuit without being annoyed (or worse) . . . . If that were enough, however, then the very fact that a suit had been filed would show the existence of standing, and the need to have a concrete injury that could be cured by a

favorable judicial decision would be abolished." *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020) (concluding plaintiff lacked standing to sue based on "mere annoyance").

S.M.'s web-browsing data was not breached or stolen by unknown hackers. The only plausibly pleaded "disclosure" was of her school computer usage, by a school agent—Securly—to her mother, in keeping with Securly's contractual duties to SPPS. Compl. ¶¶ 20, 44. The Complaint does not provide any information about how S.M.'s mere "annoyance" rose to the level of "emotional harm."

**B. Plaintiff's alleged privacy harms are not adequately pleaded injuries-in-fact.**

While a violation of privacy interests can be an injury-in-fact,[21] no such injury exists here. Tellingly, Plaintiff does not even assert a privacy tort against Securly. Securly does not secretly install hidden software to collect Student Information for its own purposes, nor does it share such information with entities or persons besides designated school contacts, parents (when requested by schools), and, as necessary, law enforcement; it does not sell Student Information or use it for any kind of marketing or targeted advertising. Decl. ¶¶ 26, 29-31. Plaintiff does not plausibly allege otherwise. The Complaint indirectly alludes to sharing with "third parties," *see, e.g.*, Compl. ¶¶ 18-19, but never says who, how, or when. The only plausibly alleged sharing of Student Information is between Securly and Plaintiff.

[21] *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-600 (9th Cir. 2020) (plaintiffs adequately claimed harm to privacy interests because they alleged, among other things, that the company's tracking of private internet browsing allowed it to amass personal information that it used for unrelated purposes).

The Declaration of Securly's CEO properly controverts the Complaint's allegations that any privacy injury exists and requires that Plaintiff present actual evidence of the harms she claims S.M. has suffered in order to establish standing.

Securly operates as an extension of a school standing *in loco parentis* when it carries out its services. As Securly explains to its school customers in the Student Privacy Policy: "You, the school, have engaged Securly, under contract, to collect Student [Data], for the use and benefit of the students and the school in the educational context as authorized by you." RJN Ex. 2; Decl. ¶ 21. Contrary to the Complaint's unsupported suggestions that Securly inappropriately eavesdrops on and indiscriminately "shares" Student Information (Compl. ¶¶ 18, 65b), Securly monitors and discloses Student Information only as the agent of the school and does not engage in the selling, marketing, or sharing of any Student Information. Securly thereby harms no student privacy interests, and S.M. has suffered no injury in fact sufficient for standing.

**i. "Invasion of privacy by way of disclosure of private facts"**

Plaintiff does not allege a disclosure of private facts in the traditional sense or any harm from such disclosure, because there was none. *See* Decl. ¶¶ 20, 26, 29-30. Plaintiff does not assert the privacy tort of public disclosure of private facts, perhaps because she is missing at least one of the elements: "publication," which requires disclosure "in the media or in any other form accessible to the population at large[.]" *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080, 1084 (D. Minn. 1999).

Even in the case of a data breach involving an educational online monitoring platform, a court in this district concluded the plaintiff parent lacked standing based on a

current invasion of privacy injury because it was insufficiently pleaded. *See George D. ex rel. G.D. v. NCS Pearson, Inc.,* No. 19-2814, 2020 WL 3642325, at *2 (D. Minn. July 6, 2020). In *George D.*, the plaintiff did not provide any basis for believing his child had suffered harm as a result of the cyberattack that led to the release of the student's name, birthdate, email address, and "unique identification number." *Id.* at *1-2. "Without evidence of harm caused by use of the stolen information, this Court will not *assume* that harm has occurred." *Id.* at *2 (citing *In re SuperValu, Inc.*, 870 F.3d 763, 769–70 (8th Cir. 2017)) (emphasis added). If a plaintiff lacks standing when his information was *stolen by criminals* from his school's software contractor, Plaintiff cannot have standing here, where Securly—acting on behalf of the school—properly disclosed school data about S.M.'s computer use to her mother.

**ii. "Invasion of privacy by way of intrusion upon seclusion"**

Plaintiff also does not allege intrusion upon seclusion in the traditional sense or any related harm, and there was none. *See* Decl. ¶¶ 9, 12-13, 27-28. Intrusion upon seclusion requires that a defendant "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of [the plaintiff] or his private affairs or concerns," and the intrusion must "*be highly offensive to a reasonable person.*" *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1014–15 (D. Minn. 2023) (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)) (emphasis added).

Here, the alleged intrusion was into a middle-schooler's internet usage on a school computer. While children do not "shed their constitutional rights. . . at the schoolhouse gate," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969), students have

diminished privacy expectations in school property, *see Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 830 (2002) ("A student's privacy interest is limited in a public school environment where the [s]tate is responsible for maintaining. . . safety."). And even if they have not been notified,[22] students have no reasonable expectation of privacy in their internet usage on a school computer as schools are legally required to monitor—or outsource monitoring—for inappropriate online materials, as mandated by Congress under CIPA. *See* 47 U.S.C. § 254(h)(5)(B)(i)-(ii).

As noted above, federal law mandates that schools "monitor[] the online activities of minors," and schools accordingly have a duty to students to screen for inappropriate sexual material, sexual abuse, or other information that reflects harm to the student or harm to others, such as potential school shootings.[23] Securly, acting on behalf of SPPS, was not intruding upon S.M.'s seclusion but rather complying with federal law.

In sum, Plaintiff does not adequately plead how S.M. has suffered the barely alleged injuries-in-fact to establish standing, and even reading the Complaint generously, the Declaration's facts defeat Plaintiff's theories.

## III. Plaintiff Fails To State a Claim Under Rule 12(b)(6)

Dismissal is also warranted under Rule 12(b)(6), as the Complaint fails to state a claim for relief. To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

[22] As noted above, SPPS has provided disclosures on its website. *See supra* notes 11-12.
[23] 47 C.F.R. § 54.520; 47 U.S.C. § 254(h), (l).

*Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Complaint, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, the non-conclusory allegations must also be "plausible," with a court undertaking a "context-specific" assessment that "draw[s] on its judicial experience and common sense." *Id.* at 679. Because the non-conclusory and plausible factual allegations here have not "nudged [the] claims across the line from conceivable to plausible," the Complaint should be dismissed in its entirety. *Twombly*, 550 U.S. at 556.

### A. Plaintiff Fails to State a Claim Under the Minnesota Government Data Practices Act (Count I)

Plaintiff asserts violations of three provisions of the Minnesota Government Data Practices Act (MGDPA), but Securly's activities are permitted by MGDPA and Plaintiff has suffered no damages, and thus her state-law claims must fail.

#### i. Plaintiff has not suffered the required damages.

To make out a claim for a violation of MGDPA, a plaintiff must have suffered damages resulting from the alleged violation. Minn. Stat. § 13.08, Subd. 1; *see also Anderson v. Indep. Sch. Dist.*, 357 F.3d 806, 810-11 (8th Cir. 2004). In another case from this district, where defendants technically violated MGDPA, the court granted judgment in defendants' favor because the plaintiff failed to adequately allege damages. *See Rivkin v. Hennepin Cnty.*, No. CIV. 01-670, 2002 WL 31777800, at *7 (D. Minn. Dec. 12, 2002).

Here, Plaintiff has failed to allege any actual harm from the school-directed monitoring of S.M.'s activities on her school-issued computer. Plaintiff simply alleges "emotional harm by way of annoyance" and lists invasion-of-privacy torts without explaining how S.M. was harmed in any particularized way. Compl. ¶ 46. Securly can find no cases to support the proposition that a middle-schooler's annoyance at her mother learning about her activities on a school computer is a cognizable harm.

**ii. Securly's activities are permitted by MGDPA.**

(a) The alleged sharing of S.M.'s data does not violate Minn. Stat. § 13.32, Subd. 13(e).

Under Minnesota law, "a technology provider must not sell, share, or disseminate educational data, *except as provided by this section or as part of a valid delegation or assignment of its contract with a public educational agency or institution*." Minn. Stat. § 13.32, Subd. 13(e) (emphasis added). "Educational data" in the statute is "private data on individuals and shall not be disclosed except" pursuant to certain listed federal laws and regulations. § 13.32, Subd. 3(e). Among the regulations listed is 34 C.F.R. § 99.31, which allows disclosure of student information to the student or her parent. *See* 34 C.F.R. § 99.31; *see also* 20 U.S.C. § 1232g(b)(1)(H) (similarly excepting parents).

That is what allegedly happened here.[24] Plaintiff alleges that Securly sent her "emails containing S.M.'s searches and school-issued device activity." Compl. ¶ 65. Such

[24] As noted above, Plaintiff does not plausibly allege that Securly shared student data with anyone other than parents, Compl. ¶¶ 29-30, and even if she did, Plaintiff does not assert that such sharing violated Minn. Stat. § 13.32, Subd. 13(e). *See* Compl. ¶¶ 55-67.

sharing of S.M.'s educational data was, therefore, in accordance with federal law and is excepted from Subd. 13(e)'s prohibition.

(b) The alleged sharing of S.M.'s data does not violate Minn. Stat. § 13.32, Subd. 13(f).

As Plaintiff notes, "[a] technology provider must not use educational data for any commercial purpose, including but not limited to marketing or advertising to a student or parent." Compl. ¶ 66b (quoting Minn. Stat. § 13.32, Subd. 13(f)). But Plaintiff fails to include that, in this context, "a commercial purpose does not include providing the specific services contracted for by a public educational agency or institution." Minn. Stat. § 13.32, Subd. 13(f).

Plaintiff alleges Securly violated this provision by sending Plaintiff emails that featured samples of S.M.'s school-issued device activity and a link to review more activity by signing up for a Securly account. Compl. ¶ 69. That is not marketing; that was part of Securly's provision of the services SPPS requested by contract—monitor and report. *See, e.g.*, *id.* ¶¶ 2, 30. Securly discloses Student Information only as the agent of the school and does not share such information with entities or persons besides designated school contacts, parents (when requested by schools), and, as necessary, law enforcement; it does not sell Student Information or use it for any kind of marketing or targeted advertising. RJN Ex. 2. And Securly does not charge parents for using the Securly app. *See* Compl. ¶¶ 36-37. Any emails Plaintiff received from Securly were part of the service for which SPPS contracted. *See id.* ¶ 4.

(c) The alleged sharing of S.M.'s data does not violate Minn. Stat. § 13.32, Subd. 14.

As Plaintiff notes, "a government entity or technology provider must not electronically access or monitor: (1) any location-tracking feature of a school-issued device; (2) any audio or visual receiving, transmitting, or recording feature of a school-issued device; or (3) student interactions with a school-issued device, including but not limited to keystrokes and web-browsing activity." Compl. ¶ 70b (citing Minn. Stat. § 13.32, Subd. 14(a)(1)-(3)). Plaintiff declines to mention several enumerated exceptions to that prohibition. *See* Minn. Stat. § 13.32, Subd. 14(b). At least two of them are applicable—and dispositive—here.

First, a technology provider may engage in those enumerated activities if the activity is necessary to comply with federal or state law, including but not limited to section 121A.031." Minn. Stat. § 13.32, Subd. 14(b)(5). That section concerns school bullying and encourages schools and school districts to "engage all students and adults in integrating education, intervention, and other remedial responses into the school environment." Minn. Stat. § 121A.031, Subd. 5(b)(2)-(3). Securly's software responds to these directives. *See, e.g.*, Compl. ¶ 2.

Further, as noted above, CIPA requires schools and libraries receiving federal broadband rates to filter and monitor online activity on school computers. *See* 47 U.S.C. § 254(h)(5)(B)(i)-(ii); 47 C.F.R. § 54.520(c)(i) (requiring schools to establish a program for "monitoring the online activities of minors"). SPPS has hired Securly to do exactly that

kind of monitoring, and Securly has monitored consistent with those obligations, as spelled out in its Student Privacy Policy. RJN Ex. 2.

Second, a technology provider may also engage in Subd. 14(a) activities if "necessary to participate in federal or state funding programs, including but not limited to the E-Rate program." Minn. Stat. § 13.32, Subd. 14(b)(6). The E-Rate program, which is administered under the direction of the Federal Communications Commission, helps schools and libraries obtain affordable broadband internet service.[25] A condition of receiving funds through E-Rate is that schools meet the requirements of CIPA, one of which is installing a technology protection measure (filter) to block or filter certain inappropriate content. *See* 47 U.S.C. § 254(h)(5); 47 C.F.R. § 54.520. School districts, such as SPPS,[26] must certify that "an Internet safety policy has been adopted and implemented" and "ensure[] the use of such computers in accordance with the certifications. *See* 47 U.S.C. § 254(h)(5)(A)(i); *see also* 47 C.F.R. § 54.520(c)(1). Specifically, the school entity must certify that it is "*enforcing a policy of Internet safety for minors that includes monitoring the online activity of minors and the operation of a technology protection measure with respect to any of its computers with Internet access* that protects against access through such computers to visual depictions that are (I) obscene; (II) child pornography; or (III) harmful to minors." 47 U.S.C. § 254(h)(5)(B)(i) (emphasis added). The school entity must

---

[25] Federal Communications Commission, *E-Rate - Schools & Libraries USF Program*, last updated July 16, 2024, https://www.fcc.gov/general/e-rate-schools-libraries-usf-program.

[26] SPPS has received E-Rate funds: https://opendata.usac.org/stories/s/jj4v-cm5x (Search "Saint Paul Public School District 625"); https://tools.e-ratecentral.com/us/public/frnDetail_all-ecf.asp?v=&ky=ECF2190004635.

also certify that is "enforcing the operation of such technology during any use of such computers by minors." 47 U.S.C. § 254(h)(5)(B)(ii). To carry out those responsibilities, each school must "adopt and implement an Internet safety policy that addresses access by minors to inappropriate matter on the Internet and World Wide Web . . . and measures designed to restrict minors' access to materials harmful to minors." 47 U.S.C. § 254(l)(1)(A)(v); *see also* 47 C.F.R. § 54.520(c)(1)(ii). Securly's Filter and Home, which perform these key required functions, are therefore necessary to comply with the E-Rate program, per Minn. Stat. § 13.32, Subd. 14(b)(6).

For these reasons, Securly has not violated the MGDPA.

### B. Plaintiff Fails to State a Claim Under Counts II (the Electronic Communications Privacy Act) & Count IV (the Wiretap Act)

Plaintiff appears to assert the same claim for unauthorized interception under 18 U.S.C. § 2511, in Count II under the Electronic Communications Privacy Act (ECPA) and in Count IV under the Wiretap Act, which is Title I of ECPA. *Compare* Compl. ¶¶ 75-81, *with id.* ¶¶ 78b-87. To plead such a claim, Plaintiff must allege that Securly "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Mekhail v. N. Mem'l Health Care*, No. 23-CV-00440, 2024 WL 1332260, at *2 (D. Minn. Mar. 28, 2024) (quoting *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015)).[27]

[27] The Complaint does not appear to assert a claim for "use" or "disclosure" beyond including the words in the Count II heading. But even if it had, Securly did not know or have reason to know that it was using or disclosing the fruit of an interception in violation

Securly's filtering and monitoring are not ECPA-prohibited interceptions for at least two reasons. First, ECPA generally permits monitoring that is "a necessary incident to the rendition of [the electronic communication] service or to the protection of the rights or property of the provider of that service . . . ." *See* 18 U.S.C. § 2511(2)(a). Here, SPPS provided the electronic communications service and an iPad to use that internet service to S.M. Compl. ¶ 16. As discussed above, per E-Rate and other federal laws and programs, SPPS was required to undertake certain measures to make internet use on such iPads safe for students like S.M. SPPS contracted with Securly, an agent of the school and a school official under FERPA, to provide this necessary service to protect all involved. In this way, because Securly was acting as the agent of the electronic communications service provider, Securly did not intercept S.M.'s communications in violation of ECPA. 18 U.S.C. § 2511(2)(a).

Second, an interception is not prohibited "where one of the parties to the communication has given prior consent to such interception." *Id.* § 2511(2)(d); *see In re Google*, 806 F.3d at 142-43 ("Because the defendants were the intended recipients of the transmissions at issue—i.e. GET requests that the plaintiffs' browsers sent directly to the defendants' servers—we agree that § 2511(2)(d) means the defendants have done nothing unlawful under the Wiretap Act."); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) ("Amazon acted as no more than a second party to a communication.

---

of § 2511. For the reasons stated below, there was no illegal interception, which is a predicate to any illegal use or disclosure. Further, Securly was acting according to its agreement with SPPS so that SPPS could comply with federal law, not violate it.

This is not an interception as defined by the Wiretap Act"). As the owner of the iPad who was also obligated to monitor students' online activity, SPPS was a party to the communications. In contracting with Securly to perform its filtering and monitoring services, SPPS consented to the alleged interceptions to comply with federal law. In this way, too, Securly did not intercept S.M.'s communications in violation of ECPA.

### C. Plaintiff Fails to State a Claim Under the Computer Fraud and Abuse Act (Count III)

Like ECPA, the Computer Fraud and Abuse Act (CFAA) is primarily a criminal statute and generally intended to target computer hackers, *see Van Buren v. United States*, 593 U.S. 374, 378-79 (2021), not educational technology companies like Securly who contract with schools to protect students. To plead a prima facie case under the CFAA, Plaintiff must show that Securly "intentionally accessed a protected computer without authorization and, as a result, caused an annual loss of at least $5,000." *Cenveo Corp. v. CelumSolutions Software GMBH & Co KG*, 504 F. Supp. 2d 574, 580-81 (D. Minn. 2007) (citing 18 U.S.C. § 1030(g), (a)(5)(A)(i)-(iii) & (a)(5)(B)(i)).

Plaintiff does not make clear under what part of the b she asserts her claim. But assuming her claim is under § 1030(a)(5)(C), it fails for at least two reasons. First, Securly simply did not access S.M.'s school-owned computer "without authorization." SPPS authorized Securly to access its iPad. *See* Compl. ¶ 17.

Second, Plaintiff has also not adequately pleaded the "damage and loss" element of § 1030(a)(5)(C). Damage in the CFAA entails "any impairment to the integrity or availability of data, a program, or information." § 1030(e)(8). Plaintiff has not pleaded any

such "damage" to the school-owned iPad issued to S.M.[28] Even if Plaintiff need only plead a "loss" under § 1030(g), she has not done so. "Loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." § 1030(e)(11). The loss must be economic damages of more than $5,000. *See* § 1030(g) & (c)(4)(A)(i)(I); *Cenveo Corp.*, 504 F. Supp. 2d at 581.

The only such loss Plaintiff has alleged is "attorneys' fee for the response and investigation" into the asserted violation of the CFAA. Compl. ¶ 73b. This loss is not cognizable under the CFAA. First, this was not a "reasonable" cost. At the time Plaintiff allegedly learned about Securly's monitoring of the SPPS-owned iPad, Plaintiff knew Securly's monitoring activities were directed by and sanctioned by SPPS; SPPS told her as much. *Id.* ¶¶ 20-21. There was no need to pay a lawyer to investigate a suspected hack of the device; she could have simply called SPPS, or reviewed Securly's website,[29] to understand how her daughter's school iPad was being monitored according to federal law.

Plaintiff cites an inapposite district court case that held "attorneys' fees incurred responding to the actual CFAA violation to place the plaintiff in their ex ante position" counted toward the statutory minimum loss. *See* Compl. ¶ 74b (citing *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1065–66 (S.D. Iowa 2009), modified, No. 4:07-CV-00204-

---

[28] Even if she had, it would not be her claim to bring, as SPPS owns the iPad, not S.M. or Plaintiff.

[29] As noted above, SPPS has provided disclosures on its website. *See supra* notes 11-12.

JEG, 2009 WL 10669611 (S.D. Iowa Nov. 10, 2009)). In *NCMIC*, the defendant obtained the plaintiff company's customer spreadsheet which included Social Security numbers and credit information. 638 F. Supp. 2d at 1064. As a result, the plaintiff had to pay for an investigation into whether the defendant had shared that information with third parties, for legal analysis regarding whether it had an obligation to report the disclosure of this information to state authorities or notify the victims, and for identify-theft-prevention services. *Id.*

Plaintiff does not describe the alleged harm, investigation, or costs here, much less adequately allege how her attorney put her back in her ex ante position through his investigation. *See Pipeline Prods., Inc. v. S&A Pizza, Inc.*, No. 4:20-00130, 2020 WL 4506090 (W.D. Mo. Aug. 5, 2020) (dismissing a CFAA allegation that "does nothing more than provide bare, conclusory allegations, which amount to mere recitation of the elements outlined in § 1030(a)(4)"). Further, there was no need here for the kind of investigation described in *NCMIC* as there was no security breach that might require reporting to state attorneys general. After all, SPPS owned the iPad in question and contracted with Securly to monitor it. The only reason for Plaintiff to contact a lawyer "for response and investigation" would be to determine if she had a legal claim, but those costs, if there were any, are non-compensable. *See Abu v. Dickson*, No. 20-10747, 2023 WL 3668515, at *4–5 (E.D. Mich. May 25, 2023), *aff'd*, 107 F.4th 508 (6th Cir. 2024) (distinguishing *NCMIC*, noting plaintiffs' legal fees incurred for "building a civil case" against the defendants did not count toward the CFAA's $5,000 minimum, and granting judgment to defendants); *NCMIC*, 638 F. Supp. 2d at 1065 (citing *Wilson v. Moreau*, 440 F.Supp.2d 81, 110 (D.R.I.

2006) ("attorneys' fees in prosecuting a CFAA action do not count toward the $5000 statutory threshold").

For these reasons, Plaintiff fails to state a CFAA claim against Securly.

## CONCLUSION

Securly respectfully requests that the Court grant its motion, striking the immaterial allegations in the Complaint and dismissing the Complaint for lack of standing or failure to state any claims.

Dated: August 2, 2024

Respectfully submitted,

*/s/ Amanda Mills*

Amanda Mills
(MN Bar No. 0397685)
FREDRIKSON & BYRON, P.A.
60 South Sixth St Ste 1500
Minneapolis, MN 55402-4400
Tel: 1-612-492-7199
Fax: (612)-492-7077
amills@fredlaw.com

Edward McNicholas (D.C. Bar No. 459136*, admitted pro hac vice*)
Frances Faircloth (D.C. Bar No. 1021834, *admitted pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: (202) 508 4600
Fax: (202) 508-4650
Edward.McNicholas@ropesgray.com
Fran.Faircloth@ropesgray.com

*Attorneys for Defendant Securly, Inc.*